IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

Case Number: 2:22-cv-14369

GS HOLISTIC, LLC,

                 Plaintiff,

v.

PSL RETAIL CORP d/b/a PSL SMOKE &
VAPE SHOP, AGYEMANG ATTA
YOSEPH FELLOWES, NAJI FELLOWES,
and JULIO GARCIA,

                 Defendants.

_____/

### DEFENDANT   AGYEMANG ATTA YOSEPH FELLOWES'S FIRST AMENDED ANSWER AND AFFIRMATIVE DEFENSES

Defendant Agyemang Atta Yoseph Fellowes, ("FELLOWES" or "Defendant" interchangeably), by

and through undersigned counsel  hereby answers the Complaint filed by plaintiff, GS HOLISTIC,

LLC ("Plaintiff"), and denies any, and all, allegations or inference that are not expressly admitted or

stated herein. Defendants state as follows as to Plaintiffs' specific allegations in the Complaint and

raise the following affirmative defenses:

**Jurisdictional Allegations**

1.     This is a civil action against the Defendants for trademark infringement,
counterfeiting, and false designation of origin and unfair competition, under the Lanham Act (15
U.S.C. § 1051 *et. seq.*).

     **ANSWER:** The allegations of ¶ 1 make no specific factual allegation against the FELLOWES and

     therefore no answer is required; to the extent an answer is required from the Defendant, Defendants

state that 15 U.S.C. § 1051 *et. seq.* speaks for itself and all other allegations and inferences of ¶1, as alleged, are otherwise Denied.

2.    This Court has subject matter jurisdiction over the claims in this action that relate to trademark infringement, counterfeiting, and false designation of origin and unfair competition pursuant to the provisions of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:** Admitted.

3.    This Court has personal jurisdiction over the Defendants because PSL RETAIL CORP d/b/a PSL SMOKE & VAPE SHOP is incorporated in and has its principal place of business in Florida.  The OWNERS reside in Florida, and the Defendants regularly conduct and solicit business in the State of Florida (including in this Judicial District).

**ANSWER:** Admitted.

### Venue

4.    Venue is proper in this district under 28 U.S.C. § 1391(b) in that the Defendants reside in this district, a substantial part of the events or omissions giving rise to the claim occurred in this district, and the Defendants are subject to personal jurisdiction in this Judicial District with respect to this action, and there is no other district in which the action may otherwise be brought.

**ANSWER:** Admitted.

### Parties

5.    GS HOLISTIC, LLC is a Delaware Limited Liability Corporation that has its principal place of business at 7162 Beverly Boulevard, #207, Los Angeles, California 90036.  GS is the registered owner of the Stündenglass trademarks.

**ANSWER:**  Defendant is without knowledge as to the allegations of ¶ 5 of the Compl. and demand strict proof thereof as to corporate persona and validity of the Stündenglass trademarks ("Marks") as alleged by Plaintiff.  All other allegations and inferences of ¶ 5 are otherwise denied.

6.    PSL RETAIL CORP d/b/a PSL SMOKE & VAPE SHOP (hereinafter referred to as "PSL SMOKE & VAPE SHOP") is a company/corporation that is incorporated in Florida and has its principal place of business at 10008 S U.S. Hwy 1, Port St. Lucie, FL 34952. PSL SMOKE & VAPE SHOP has engaged in the unlawful manufacture, retail sale, and/or wholesale sales of counterfeit Stündenglass glass infusers.

**ANSWER**: Defendant  Admits in part and Denies in part the allegations of Paragraph 6. Defendant

admits PSL SMOKE & VAPE SHOP is a Florida corporation operating in Port St. Lucie,

Florida. Defendant denies PSL SMOKE & VAPE SHOP has engaged in the unlawful

manufacture, retail sale, and/or wholesale sales of counterfeit Stündenglass glass infusers

as alleged in ¶ 6. All other allegations or inferences of ¶ 6 are otherwise denied.

7.     At all times material to this Complaint, the OWNERS owned, managed, and/or
operated PSL SMOKE & VAPE SHOP, and regularly exercised the authority to purchase products
for resale, decide which products PSL SMOKE & VAPE SHOP offered for sale, to hire and fire
employees, and controlled the finances and operations of PSL SMOKE & VAPE SHOP.

ANSWER: Admitted.

### Facts Common to All Counts

A. <u>The History of The Stündenglass Brand</u>.

8.     Since 2020, GS has marketed and sold products using the well-known trademark
"Stündenglass." The Stündenglass branded products, such as glass infusers and accessories related
thereto, are widely recognized nationally and internationally. Indeed, the Stündenglass brand is
one of the leading companies in the industry, known for high quality and innovation of products.

**ANSWER**: Defendant is without knowledge and demand strict proof thereof as to the validity of

"Stündenglass" as a trademark under federal law ("Mark") or variations of the Mark or Mark

elements as alleged by the Plaintiff, all other remaining inferences of this paragraph are denied.

9.     For approximately two years, GS has worked to distinguish the Stündenglass brand
as the premier manufacturer of glass infusers by emphasizing the brand's unwavering use of
quality materials and focusing on scientific principles which facilitate a superior smoking
experience. Stündenglass branded products embody a painstaking attention to detail, which is
evident in many facets of authentic Stündenglass branded products. It is precisely because of the
unyielding quest for quality and unsurpassed innovation that Stündenglass branded products have
a significant following and appreciation amongst consumers in the United States and
internationally.

**ANSWER**: Defendant is without knowledge and demands strict proof thereof as to the validity of

"the Mark and variations or elements of the Mark as alleged by the Plaintiff, all other remaining

inferences of this paragraph are denied.

10.     As a result of the continuous and extensive use of the trademark "STÜNDENGLASS," GS was granted both valid and subsisting federal statutory and common law rights to the Stündenglass trademark.

**ANSWER**: Defendant is without knowledge and demands strict proof thereof as to the validity of the Mark and variations or elements of the Mark as alleged by the Plaintiff, all other remaining inferences of this paragraph are denied.

11.     GS is the rightful owner of United States trademarks, which are registered on the Principal Register and have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. The following is a list of GS's federally registered trademarks:

a.     U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011.

**ANSWER**: Defendant is without knowledge and demands strict proof thereof as to the validity of the federal registration of the Mark and variations or elements of the registered Mark as alleged by the Plaintiff, all other remaining inferences of this paragraph are denied.

b.     U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034.

**ANSWER**: Defendant is without knowledge and demands strict proof thereof as to the validity of the federal registration of the Mark and variations or elements of the registered Mark as alleged by the Plaintiff, all other remaining inferences of this paragraph are denied.

c.     U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034.

**ANSWER**: Defendant is without knowledge and demands strict proof thereof as to the validity of the federal registration of the Mark and variations or elements of the registered Mark as alleged by the Plaintiff, all other remaining inferences of this paragraph are denied.

12.     The above U.S. registrations are valid, subsisting and in full force and effect.

**ANSWER**: Defendant is without knowledge and demands strict proof thereof as to the validity of the federal registration of the Mark and variations or elements of the registered Mark as alleged by the Plaintiff, all other remaining inferences of this paragraph are denied.

The Stündenglass Brand in the United States.

13.     GS has used the Stündenglass Marks in commerce throughout the United States, continuously, since 2020, in connection with the manufacturing of glass infusers and accessories.

**ANSWER**: Defendant is without knowledge and demands strict proof thereof as to the validity of the federal registration of the Mark and variations or elements of the registered Mark as alleged by the Plaintiff, all other remaining inferences of this paragraph are denied.

14.     The Stündenglass Marks are distinctive to both the consuming public and the Plaintiff's trade. GS's Stündenglass branded products are made from superior materials. The superiority of Stündenglass branded products is not only readily apparent to consumers, but to industry professionals as well.

**ANSWER**: Defendant is without knowledge and demands strict proof thereof as to the distinctiveness of the Mark and/or variations or elements thereof, or qualities of goods as alleged by the Plaintiff, all other remaining inferences of this paragraph are denied.

15.     The Stündenglass Trademarks are exclusive to GS and appear clearly on GS's Stündenglass Products, as well as on the packaging and advertisements related to the products. GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting these Trademarks. As a result, products bearing GS's Stündenglass Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS.

**ANSWER**: Defendant is without knowledge and demands strict proof thereof as to the presentation or display of the Mark on goods as alleged by the Plaintiff, all other remaining inferences of this paragraph are denied:

16.     GS's Stündenglass Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs. Because of these and other factors, the GS brand, the Stündenglass brand, and GS's Stündenglass Trademarks are famous throughout the United States.

**ANSWER**: Defendant is without knowledge of the allegation of ¶ 16 and demands strict proof

thereof, all other remaining inferences of this paragraph are denied.

17.     Since 2020, GS has worked to build significant goodwill in the Stündenglass brand in the United States. GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the Stündenglass brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion.

**ANSWER**: Defendant is without knowledge of the allegation of ¶ 17 and demands strict proof

thereof, all other remaining inferences of this paragraph are denied.

18.     In fact, the Stündenglass Products have been praised and recognized by numerous online publications, as well as publications directed to the general public.

**ANSWER**: Defendant is without knowledge of the allegation of ¶ 18 and demands strict proof

thereof, all other remaining inferences of this paragraph are denied.

19.     Due to the high quality of the brand and products, GS has collaborated with numerous celebrities and companies to create collaborations for the Stündenglass products.

**ANSWER**: Defendant is without knowledge of the allegation of ¶ 19 and demands strict proof

thereof, all other remaining inferences of this paragraph are denied.

20.     GS sells its products under the Stündenglass Marks to authorized stores in the United States, including in Florida. GS has approximately 3,000 authorized stores in the United States selling its products. As such, Stündenglass branded products reach a vast array of consumers throughout the country.

**ANSWER**: Defendant is without knowledge of the allegation of ¶ 20 and demands strict proof

thereof, all other remaining inferences of this paragraph are denied.

21.    It is because of the recognized quality and innovation associated with the Stündenglass Marks that consumers are willing to pay higher prices for genuine Stündenglass products.  For example, a Stündenglass brand glass infuser is priced at $599.95, while a non-Stündenglass branded product is also being sold for up to $600, with a range of $199 to $600.

> **ANSWER:** Defendant admits the actual value of the goods Plaintiff alleges in the Compl. is priced at $599.95 by the Plaintiff for retail sale.  Defendant is without knowledge of the remaining allegation of ¶ 21 and demands strict proof thereof, all other remaining inferences of this paragraph are denied.

22.    It is exactly because of their higher sales value that Stündenglass branded products are targeted by counterfeiters.  These unscrupulous people and entities tarnish the Stündenglass brand by unlawfully selling glass infusers that have identical, or nearly identical, versions of the Stündenglass Marks affixed to products that are made with inferior materials and technology, thereby leading to significant illegitimate profits by store owners, such as the OWNERS.

> **ANSWER:** Denied.

23.    In essence, the OWNERS mislead consumers by selling in their stores low grade products that free ride on the goodwill of the Stündenglass brand, and in turn, the OWNERS reap substantial ill-gotten profits.  The OWNERS' conduct contributes to the complete flooding of the marketplace with counterfeit products, which results in lost sales and damages to GS and irreparable harm to the Stündenglass brand's image.

> **ANSWER:** Denied.

24.    Unfortunately, the current U.S. marketplace is saturated with counterfeit products – like those the OWNERS, through their store, PSL SMOKE & VAPE SHOP, have sold.  As such, GS has been forced to scrupulously enforce its rights in order to protect the Stündenglass Marks against infringement.  By exercising its Enforcement Rights, GS has proactively and successfully policed the unauthorized use of the Stündenglass Marks and/or counterfeit Stündenglass branded products nationwide.  GS has had to bear great expense to seek out and investigate suspected counterfeiters in their attempt to clean up the marketplace.

> **ANSWER**: Denied.

### Defendants' Counterfeiting and Infringing Activities

25.    The Defendants have, without consent of GS, previously offered to sell and sold within the United States commerce, glass infusers bearing reproductions, counterfeits, copies and/or colorable imitations of the Stündenglass Trademarks that were not made or authorized by GS.  (Hereinafter the "Counterfeit Goods").

**ANSWER**: Denied.

26.     Nevertheless, the Defendants sold in commerce the Counterfeit Good using reproductions, counterfeits, copies and/or colorable imitations of one or more of the Stündenglass Marks. Specifically, the Defendants sold reproductions, counterfeits, copies, and/or colorable imitations of the Stündenglass Trademarks (hereinafter the "Infringing Marks"), detailed above.

**ANSWER**: Defendant is without knowledge of the allegation of ¶ 26 and demands strict proof

thereof, all other remaining inferences of this paragraph are denied.

27.     The Defendants have, without the consent of GS, continued to sell the Counterfeit Goods bearing the Infringing Marks, bearing the likeness of the Stündenglass Trademarks in the United States.

**ANSWER**: Denied.

28.     The marks affixed to the Counterfeit Goods that the Defendants have offered for sale are spurious marks which are identical with, or substantially indistinguishable from, the Stündenglass Trademarks. The marks on the Counterfeit Goods are in fact counterfeit marks as defined in 15 U.S.C. § 1116(d).

**ANSWER**: Defendant is without knowledge of the allegation of ¶ 28 and demands strict proof

thereof, all other remaining inferences of this paragraph are denied.

.

29.     In the ongoing investigation into the sales of counterfeit products bearing the Stündenglass Marks, on September 13, 2022, the PSL SMOKE & VAPE SHOP offered for sale Counterfeit Goods.

**ANSWER**: Defendant is without knowledge of the allegation of ¶ 29 and demands strict proof

thereof, all other remaining inferences of this paragraph are denied.

30.     Specifically, GS's investigator purchased a glass infuser with a Stündenglass Mark affixed to it, from PSL SMOKE & VAPE SHOP, for a cost of $427.99, charged to the account of GS's investigator.

**ANSWER**: Defendant is without knowledge of the allegation of ¶ 30 and demands strict proof

thereof, all other remaining inferences of this paragraph are denied.

31.     Upon receipt, images and/or the physical unit of the product purchased from PSL SMOKE & VAPE SHOP were inspected by GS's agent to determine its authenticity. The inspection of the purchased item confirmed that the glass infuser PSL SMOKE & VAPE SHOP sold to GS's investigator was a Counterfeit Good with an Infringing Mark affixed to it.

**ANSWER**: Defendant is without knowledge of the allegation of ¶ 31, or the accuracy of the criterial used by the investigator, and demands strict proof thereof, all other remaining inferences of this paragraph are denied.

32.     The OWNERS authorized, directed, and/or participated in PSL SMOKE & VAPE SHOP's offer for sale, in commerce, of the Counterfeit Goods. The OWNERS' acts were a moving, active, and/or conscious force behind PSL SMOKE & VAPE SHOP's infringement of the Stündenglass Trademarks.

**ANSWER**: Denied.

33.     The Defendants' use of the counterfeit Stündenglass Trademarks began long after the registration of the Stündenglass Trademarks. GS nor any of its authorized agents have consented to the Defendants' use of the Stündenglass Trademarks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof.

**ANSWER**: Denied.

34.     The unauthorized sale by PSL SMOKE & VAPE SHOP, under the authority, direction and/or participation of the OWNERS, of the Counterfeit Good(s) was an unlawful act in violation of the Lanham Act.

**ANSWER**: Denied.

35.     The offer for sale by the Defendants of the Counterfeit Good(s) bearing GS's Trademarks has caused GS to suffer losses and has caused damage to the goodwill and reputation associated with the Stündenglass Trademarks, which are owned by GS.

**ANSWER**: Denied.

36.     PSL SMOKE & VAPE SHOP's use of the Stündenglass Marks includes displaying, selling, and/or offering for sale unauthorized copies of Stündenglass branded products. PSL SMOKE & VAPE SHOP's offering to sell, and the sale of the Stündenglass counterfeit products, bearing the Infringing Mark in this manner, was, and is, likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit Goods.

**ANSWER**: Denied.
:

37.    PSL SMOKE & VAPE SHOP used images and names identical to or confusingly similar to the Stündenglass Marks, to confuse customers and aid in the promotion and sales of Counterfeit Goods under the Infringing Mark.

**ANSWER**: Denied.

38.    The Infringing Mark affixed to the Counterfeit Goods that PSL SMOKE & VAPE SHOP has distributed, provided, marketed, advertised, promoted, offered for sale, and/or sold, is confusingly identical or similar to the Stündenglass Marks that GS affixes to its glass infusers.

**ANSWER**: Denied.

39.    The glass infusers that PSL SMOKE & VAPE SHOP sells and offers for sale under the Infringing Mark are made of substantially inferior materials and inferior technology as compared to genuine Stündenglass brand products.

**ANSWER**: Denied.

40.    PSL SMOKE & VAPE SHOP has distributed, provided, marketed, advertised, promoted, offered for sale, and sold its water pipes under the Infringing Mark through its retail convenience store.

**ANSWER**: Denied.

41.    Upon information and belief, PSL SMOKE & VAPE SHOP has marketed, advertised, and promoted its Counterfeit Goods under the Infringing Mark through point of purchase displays, and/or its website, and/or via social media promotion.

**ANSWER**: Denied.

42.    PSL SMOKE & VAPE SHOP and the OWNERS' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by PSL SMOKE & VAPE SHOP, and are likely to deceive, and have deceived, the relevant consuming public into mistakenly believing that the Counterfeit Goods sold by PSL SMOKE & VAPE SHOP originate from, are associated or affiliated with, or otherwise authorized by GS.

**ANSWER**: Denied.

43.    PSL SMOKE & VAPE SHOP and the OWNERS' acts are willful with the deliberate intent to trade on the goodwill of the Stündenglass Marks, cause confusion and deception in the marketplace, and divert potential sales of the Plaintiff's glass infusers to PSL SMOKE & VAPE SHOP.

**ANSWER**: Denied.

44.     PSL SMOKE & VAPE SHOP and the OWNERS' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to GS, the Stündenglass Marks, and to its valuable reputation and goodwill with the consuming public for which GS has no adequate remedy at law.

**ANSWER**: Denied.

45.     As a proximate result of the unfair advantage accruing to the OWNERS and PSL SMOKE & VAPE SHOP's business from deceptively trading on GS's advertising, sales, and consumer recognition, the OWNERS and PSL SMOKE & VAPE SHOP has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

**ANSWER**: Denied.

46.     The injuries and damages sustained by GS has been directly and proximately caused by PSL SMOKE & VAPE SHOP and the OWNERS wrongful advertisement, promotion, distribution, sale and offers for sale of their goods bearing infringements or counterfeits of the Stündenglass Marks.

**ANSWER**: Denied.

47.     Through such business activities, the OWNERS and PSL SMOKE & VAPE SHOP purposefully derived direct benefits from its interstate commerce activities by targeting foreseeable purchasers in the State of Florida, and in doing so, have knowingly harmed GS.

**ANSWER**: Denied.
:

48.     Furthermore, the sale and distribution of Counterfeit Goods by PSL SMOKE & VAPE SHOP has infringed upon the above-identified federally registered trademarks.

**ANSWER**: Denied.

49.     The spurious marks or designations used by PSL SMOKE & VAPE SHOP in interstate commerce are identical with, or substantially indistinguishable from, the Stündenglass Marks on goods covered by the Stündenglass Marks. Such use therefore creates a false affiliation between PSL SMOKE & VAPE SHOP, GS, and the Stündenglass Marks.

**ANSWER**: Denied.

50.     Due to the actions of the OWNERS and PSL SMOKE & VAPE SHOP, GS has been forced to retain the undersigned counsel and pay the costs of bringing an action forward. The OWNERS and PSL SMOKE & VAPE SHOP should be responsible for paying GS's reasonable costs of the action.

**ANSWER**: Denied.

51.     The OWNERS and PSL SMOKE & VAPE SHOP's acts have damaged, and will continue to damage GS, and GS has no adequate remedy at law.

**ANSWER**: Denied.

52.     Moreover, PSL SMOKE & VAPE SHOP and the OWNERS' wrongful acts will continue unless enjoined by the Court. Accordingly, the OWNERS and PSL SMOKE & VAPE SHOP must be restrained and enjoined from any further counterfeiting or infringement of the Stündenglass Marks.

**ANSWER**: Denied.

## Count One
## Federal Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114

53.     The Plaintiff avers Paragraphs 1 through 52, which are stated above and incorporate the allegations therein, as though they are fully restated and incorporated in this Count by reference.

**ANSWER**:  Defendant re-avers and fully incorporates anew his answers and responses to ¶ 1

through ¶ 52 of the Complaint as answer to ¶ 53.

54.     GS owns the federally registered Stündenglass Trademarks, as set forth in more detail in the foregoing paragraphs.

**ANSWER**: Defendant is without knowledge of the allegation of  ¶ 54 and demands strict proof

thereof, all other remaining inferences of this paragraph are denied.

55.     The Defendants, without authorization from GS, have used in commerce spurious designations that are identical with, or substantially indistinguishable from, the Stündenglass Trademarks on the same goods covered by the Stündenglass Trademarks.

**ANSWER**: Denied

56.     The Defendants' unauthorized use of counterfeit marks of the registered Stündenglass Trademarks on and in connection with the Defendants' offer(s) for sale in commerce is likely to cause confusion or mistake in the minds of the public.

**ANSWER**: Denied:

57.     The Defendants' conduct as alleged herein is willful and intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants, with GS or the Stündenglass Trademarks.

**ANSWER**: Denied

58.    The Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**ANSWER**: Denied:

59.    The Defendants' actions constitute the use by the Defendants of one or more "counterfeit mark(s)" as defined in 15 U.S.C. § 1116(d)(1)(B).

**ANSWER**: Denied

60.    The Defendants' use in commerce of the counterfeit Stündenglass Trademarks has resulted in lost profits and business to GS, which are difficult to determine.  The Defendants have also, by selling counterfeit Stündenglass products, caused considerable damage to the goodwill of the Stündenglass Trademarks, and diminished the brand recognition of the Stündenglass Trademarks by introducing counterfeit products into the marketplace.

**ANSWER**: Denied:

61.    By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**ANSWER**: Denied

**WHEREFORE**, Defendants having Answered **Count I** of the Complaint, it prays that the Court enters an order of judgment in favor of Defendant under this **Count I** wherein the Plaintiff takes nothing for failures to state a claim beyond claims recoverable by Plaintiff individually, or by joinder of necessary individual parties; or otherwise Deny or Dismiss the claims, and that, Plaintiff pays Defendant's costs, including attorney fees relevant to the claims of this Count, or any relief it deems necessary, as a part of such order; and grant such other and further relief as the Court deems just and proper. Defendant further prays for costs, including attorney fees relevant to meritorious affirmative defenses, or any relief it deems necessary, as a part of such order.

**Count Two**
**Federal False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)**

62.    The Plaintiff avers Paragraphs 1 through 52, which are stated above and incorporate the allegations therein, as though they are fully restated and incorporated in this Count by reference.

**ANSWER**:  Defendant re-avers and fully incorporates anew his answers and responses to ¶ 1 through ¶ 52 of the Complaint as answer to ¶ 62.

63.    GS owns the federally registered Stündenglass Trademarks, as set forth in more detail in the foregoing paragraphs.

**ANSWER**: Defendant is without knowledge of the allegation of  ¶ 63 and demands strict proof thereof, all other remaining inferences of this paragraph are denied.

64.    The Defendants, without authorization from GS, has used in commerce spurious designations that are identical with, or substantially indistinguishable from, the Stündenglass Trademarks on the same goods covered by the Stündenglass Trademarks.

**ANSWER**: Denied

65.    The Defendants' unauthorized use of counterfeit marks of the registered Stündenglass Trademarks on and in connection with the Defendants' offers for sale in commerce is likely to cause confusion or mistake in the minds of the public.

**ANSWER**: Denied

66.    The Defendants' unauthorized use in commerce of the Stündenglass Trademarks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER**: Denied

67.    The Defendants' conduct as alleged herein is willful and is intended to and is likely. to, cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants, with GS or the Stündenglass Trademarks.

**ANSWER**: Denied

68.    The Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to GS, and to the goodwill and reputation of the Stündenglass Trademarks. Moreover, it will continue to cause damage GS and confuse the public unless enjoined by this Court.

**ANSWER**: Denied

69.    GS has no adequate remedy at law.

ANSWER:

70.     By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**ANSWER**: Denied

**WHEREFORE**, Defendants having Answered **Count II** of the Complaint, it prays that the Court enters an order of judgment in favor of Defendant under this **Count II** wherein the Plaintiff takes nothing for failures to state a claim beyond claims recoverable by Plaintiff individually, or by joinder of necessary individual parties; or otherwise Deny or Dismiss the claims, and that, Plaintiff pays Defendant's costs, including attorney fees relevant to the claims of this Count, or any relief it deems necessary, as a part of such order; and grant such other and further relief as the Court deems just and proper. Defendant further prays for costs, including attorney fees relevant to meritorious affirmative defenses, or any relief it deems necessary, as a part of such order.

## DEFENDANT'S AFFIRAMATIVE DEFENSES

Defendant asserts the following affirmative defenses, each as separate and distinct defenses to plaintiffs' alleged claims relevant in the cause of action. Insofar as any of the following expresses denial of an element of any claim alleged against defendant, such expression does not indicate that Plaintiff is relieved of their burden to prove each and every element of any such claim or that defendant has assumed any burden of proof.

**Defendant demand JURY TRIAL on the following**:

## COMMON ALTERNATIVE FACTS APPLICABLE TO RESPECTIVE AFFIRMATIVE DEFENSES

The following alternative facts are applicable, in whole or in part, to the Affirmative Defenses of the Defendant:

1. Defendants(s) did not manufacture, create, or produce materials/goods alleged as the Counterfeit Product; and did not reproduce, copy, or make colorable imitation of any part or labels that displayed Plaintiff's Marks which were affixed on the Counterfeit Product.

2. Defendants(s) purchased the alleged counterfeit goods from a Florida distributor who has common ownership in an establishment that at all times material was an authorized retailer of the Plaintiff and which operated in the same retail space in Palm Beach County as the distributor at the time of the Defendants' purchase(s). The retailer operated in the front portion of the retail space, the distributor in the back portion of the same retail space and shared a door to pass between one business to the other. No notice or distinction between the two businesses was given to the public between the two businesses, or the Defendants prior to purchase.

3. Defendants purchased two (2) items that could comprise any kind of infringement of the Plaintiff's alleged Marks.  The goods were presented as originating from the Plaintiff, and no other source, and being sold under apparent authorization of the Plaintiff.

4. At the time of purchase by the Defendant, the goods displayed a letter "S" printed though the center of a pill or capsule bearing the name "Stündenglass" and was told by the third-party distributor seller that the product was new and otherwise genuine from the manufacturer.

5. At the time of purchase by the Defendant, the Defendant had never encountered the product in the marketplace before and this was the first time Defendant had ever seen the design or the Marks comprising a letter "S" printed though the center of a pill or capsule or seen or heard the name "Stündenglass."

6. Defendants sold one (1) item to the public as a sample product. The other sale of the remaining sample item was sold to an agent of the Plaintiff, who purchased it not as a member of the public, but for the purpose of is agency.

7. Sample items have a lower retail price than regular merchandise and less than the retail price offered by the Plaintiff of $599.95 USD. See, Compl. ¶ 21.

## FIRST AFFIRMATIVE DEFENSE

## INNOCENT INFRINGEMENT AS LIMIT TO DAMAGES

As a first, separate, and affirmative defense, Defendant evokes the affirmative defense of INNOCENT INFRINGER. Defendant asserts paragraphs 1- 7 as though set forth in Facts Common to all Affirmative Defenses as a part of this Affirmative Defense. To the extent that Defendant may have infringed upon, diluted or otherwise have used any counterfeited Plaintiff's Marks or product, Plaintiff is limited in relief to loss of profit, actual damages sustained or nominal damages because of the extenuating circumstances surrounding the acts of infringing use of Defendant and the limited occurrence, duration and extent of their infringing conduct; to wit purchase of two items for resale to sample sales of the product. Defendant had reasonable grounds under the circumstances to believe that the purchase and resale of the Counterfeit Products displaying Plaintiff's Mark(s) and brand name was lawful; and Defendant actually believed that the purchase and resale of the Counterfeit Products with plaintiff's Marks was lawful.

The imposition of punitive and exemplary damages against the Defendant is improper pursuant to 15 U.S.C. § 1125(a) or permanent injunction under 15 U.S.C. § 1114, or alternatively on 15 U.S.C. § 1117 (a) through (c), 15 U.S.C. § 1118, based upon their conduct and the extenuating circumstances surrounding their infringement or use of the Counterfeit Products displaying the

Plaintiff's Marks.  Defendant did not knowingly and purposefully capitalize on, or appropriate either directly or indirectly, the goodwill of the Plaintiff.  Defendant believed the Mark(s) of the two (2) products were lawful as presented to indicate the source of origin as the plaintiff and exercised good faith, acted in a commercially reasonable manner based upon their limited knowledge of the Mark(s) of the Plaintiff and under the circumstances.

**WHEREFORE**, Defendant prays that the Court enters an order of judgment wherein the Plaintiff is denied recovery for statutory damages attributable reckless or willful conduct, and that sanction is unnecessary for future deterrence, deny permanent injunction against the Defendant, and enter an award of lost profits, actual damages or nominal damages; and that, any damages awarded be premised on the conduct of Defendant as innocent infringers and limited to the extenuating circumstances surrounding of the isolated transaction, the good faith acts and reasonable reliance of the Defendant under prevailing law; and any other relief it deems necessary, as a part of such order.

## SECOND AFFRIMATIVE DEFENSE

### EQUITABLE ESTOPPEL

As a second, separate, and affirmative defense, Defendant invokes the doctrine of EQUITABLE ESTOPPEL.   Defendant asserts paragraphs 1- 7 as though set forth in Facts Common to all Affirmative Defenses as a part of this Affirmative Defense.  To the extent that Defendant may have infringed upon, diluted or otherwise have used any counterfeited Plaintiff's Mark(s) or products, Plaintiff is barred from, or otherwise limited in, recovery by the doctrine of Equitable Estoppel.  Defendant was misled and given false information about the Counterfeit Products by the third-party - the distributor/retailer who sold Defendant the products displaying the Plaintiff's Mark(s).  This included statements and action and silence and inaction on the origin of the product, leading Defendants to infer that the Counterfeit Product it was purchasing was Plaintiff's product, and not counterfeit, and that Plaintiff

was source of origin.

 **WHEREFORE**, Defendant prays that the Court enters an order of judgment wherein the Plaintiff is barred recovery for damages attributable reckless or willful conduct, and that sanction is unnecessary for future deterrence, deny permanent injunction against the Defendants, and/or limit the award of any damages to lost profits, actual damages or nominal damages under application of the doctrine of Equitable Estoppel in consideration of the extenuating circumstances surrounding of any infringement by Defendants under prevailing law; and any other relief it deems necessary, as a part of such order.

### THIRD AFFRIMATIVE DEFENSE

LACHES

 As a third, separate, and affirmative defense, Defendants invoke the doctrine of LACHES. Defendant asserts paragraphs 1- 7 as though set forth in Facts Common to all Affirmative Defenses as a part of this Affirmative Defense. To the extent that Defendants have infringed upon, diluted, or otherwise have used any counterfeited Plaintiff's Mark(s) or product in his store location Plaintiff is barred from, or otherwise limited in, recovery by the doctrine of Laches. Neither Defendant nor his company advertised the Plaintiff's Mark(s) or counterfeit products. The products in question were simply placed on the shelf in his store location with no public advertising or marketing. No special effort was made to sell the items as this was Defendant's first contact with a product of that shape and type used as a gravity water pipe for smoking. The third-party seller from which Defendant purchased the infringing or counterfeit products is commonly owned by a party with an authorized retailer of the Plaintiff operating from the same location. The seller provided no reasonable distinction between the two business or  disclosed if operated distinct or as one and the same. The Seller made no statement to Defendant that the product was counterfeit or otherwise informed Defendant of the possibility that product displayed anything other than  lawful Mark(s).

Furthermore, no statement was made to Defendant that the seller was not authorized by the Plaintiff to resell the product. Defendant reasonably relied on the permit apparently granted him by Plaintiff's authorized retailer. Under the doctrine of Laches Plaintiff is barred from recovery and relief for infringement attributable to display of the product or product packaging at his retail store location.

**WHEREFORE**, Defendant prays that the Court enters an order of judgment wherein the Plaintiff is barred recovery for use or display of the Plaintiff's Mark(s) at the Defendant's retail store location under the application of the doctrine of Laches under prevailing law; and any other relief it deems necessary, as a part of such order.

## FOURTH AFFRIMATIVE DEFENSE

### GOOD FAITH & REASONABLE RELIANCE

As a third, separate, and affirmative defense, Defendants invoke the doctrine of GOOD FAITH and REASONABLE RELIANCE. Defendant asserts paragraphs 1- 7 as though set forth in Facts Common to all Affirmative Defenses as a part of this Affirmative Defense.   To the extent that Defendants have infringed upon, diluted, or otherwise have used any counterfeited Mark(s) of Plaintiff or product, the award of actual damages, not statutory damages against the Defendant is warranted for the following objective reasons: (1) Defendant purchased and resold goods at nominal profit margin, that when off-set by costs, does not represent an unfair advantage under federal statute(s); (2) the facts and circumstances relegated defendant to relying upon the origin of good as labeled which caused intervening confusion to the Defendant, and which was caused not by the conduct of the Defendants, but caused by conduct and misrepresentation of a third-party seller who had superior knowledge and control when selling the items to Defendant and through misrepresentations and omissions misled Defendant to purchase and resell to his detriment; (3) Defendant made appropriate inquiry at time of sale as to origin of the goods based upon

circumstances; (4) the counterfeit products in question materially mimicked the structure and format of Plaintiff's Mark(s) and design and were substantially similar to the format to Plaintiff's Mark(s) and Defendant believed those to be authentic; and (5) the facts and circumstances of the transaction did not afford to test or authenticate the genuineness of the alleged counterfeit goods, and genuineness was limited to appearance only – Defendant had no prior knowledge of materials and quality of Plaintiff's products for any comparison at time of purchase; (6) Defendant had no part in the manufacturing or production of the goods in question for purpose knowledge of infringement or counterfeiting of goods.  Plaintiff is barred from statutory damages as to willful conduct as the Defendant acted in good faith and reasonable reliance the product was authentic and origin was the Plaintiff.

**WHEREFORE**, Defendants pray that the Court enters an order of judgment wherein the Plaintiff is denied statutory, and that any actual damages are set-off by the good faith reliance of the defendant of prevailing law; and any other relief it deems necessary, as a part of such order.

DATED:  June 25, 2023

*Respectfully Submitted on behalf of Defendant*
*Agyemang Atta Yoseph Fellowes*

By: __/s/_Edward _A. Maldonado_ /s/__
Edward A. Maldonado, Esq.
Law Offices of Edward A. Maldonado, P.A.
2850 Douglas Road. Suite 303
Coral Gables, Florida 33134
Telephone: (305) 477-7580 ex 214
E-mail: eam@maldonado-group.com
Secondary Email: lawclerk@maldonado-group.com

*Attorney for Defendant*
*Agyemang Atta Yoseph Fellowes*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this June 25, 2023 a true and correct copy of the above foregoing FIRST AMENDED ANSWER and AFFIRMATIVE DEFENSES by the Defendant AGYEMANG ATTA YOSEPH FELLOWES was served copy and notice upon the Plaintiff via the court's electronic filing [ECF] system and e-mail on the following:

COUNSEL OF RECORD FOR PLAINTIFF:

Ms. Gabrielle  Alexa Penalta, Esq.
*The Ticktin Law Group*
270 SW Natura Avenue
Deerfield Beach. Florida 33441
Email: Serv600@LegalBrains.com
Secondary Email: Serv555@LEgalBrains.com
Tel: 813-448-1129
*Attorney for the Plaintiff.*


Respectfully Submitted,                                  Date: June 25, 2023

On Behalf of Defendant
AGYEMANG ATTA YOSEPH FELLOWES

Law Offices of Edward A. Maldonado, P.A.
MALDONADO LAW                           By: __/s/_*Edward _A. Maldonado* /s/__
2850 Douglas Road. Suite 303            Edward A. Maldonado, Esq.
Coral Gables, Florida 33134             Florida Bar No. 0129781
Telephone: (305) 477-7580 ex 214        Attorney for the Defendants
Facsimile: (305) 477-7504
E-mail: eam@maldonado-group.com
And Lawclerk@maldonado-group.com